IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DONNA MORRISON**, *et al.*,<br><br>    Plaintiffs,<br><br>    *v.*<br><br>**SELECTIVE INSURANCE COMPANY OF THE SOUTHEAST**,<br><br>    Defendant. | **CIVIL ACTION**<br><br><br>**NO. 21-4731-KSM** |

<u>**MEMORANDUM**</u>

**MARSTON, J.**                                                                 **October 19, 2022**

Plaintiffs Donna Morrison and Guy Doneker bring this action against Defendant

Selective Insurance Company of the Southeast ("Selective").  (Doc. No. 1-1.)  Plaintiffs claim

that Selective breached their insurance policy by failing to cover water damage to Plaintiffs'

basement.  (*Id.* ¶¶ 8–12.)  Plaintiffs also claim that Selective acted in bad faith in denying their

claim.  (*Id.* ¶¶ 13–16.)  Presently before the Court is Selective's motion for summary judgment.

(Doc. No. 12.)  For the reasons below, Selective's motion is granted.

**I.      BACKGROUND**

  *A.      Factual Background*

Viewing the evidence in the light most favorable to Plaintiffs, the relevant facts are as

follows.

  **1.      The Policy**

Selective issued a homeowners insurance policy (the "Policy") to Plaintiffs covering

Plaintiffs' home in Croydon, Pennsylvania (the "Property").  (*See* Doc. No. 12-8 at 3.)  The

Policy provided "certain specified coverage" for the Property for the period from December 21,

2020 to December 21, 2021.  (Doc. No. 12-3 ¶¶ 7–8.)

The Policy does not provide coverage for loss caused by any specifically enumerated exclusion, including loss caused by "Water."  (Doc. No. 12-8 at 18, 53.)  The Policy defines "Water" as

> 1. Flood, surface water, waves, including tidal wave and tsunami, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind, including storm surge;
>
> 2. Water which:
>
>> a. Backs up through sewers or drains; or
>>
>> b. Overflows or is otherwise discharged from a sump, sump pump or related equipment;
>
> as a direct or indirect result of flood;
>
> 3. Water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure; or
>
> 4. Waterborne material carried or otherwise moved by any of the water referred to in [subprovisions 1 through 3] of this Exclusion.
>
> This Exclusion applies regardless of whether any of the above . . . is caused by an act of nature or is otherwise caused.

(*Id.* at 53.)

Additionally, in subsection A.2.c.(6) of the Section titled "Perils Insured Against," the Policy indicates that it does not insure for loss caused by certain specifically enumerated causes, including wear and tear, smog, rust, dry rot, birds, vermin, rodents, insects, and animals owned or kept by an insured.  (*Id.* at 15.)  However, the Policy includes an "Exception to c.(6)," which provides,

> Unless the loss is otherwise excluded, we cover loss to property. . . resulting from an accidental discharge or overflow of water or steam

from within a:

(i)     Storm drain, or water, steam or sewer pipe, off the "residence premises" . . .

(*Id.* at 16.)

### 2.     The Rainstorm and Selective's Investigation into the Resulting Damage

On July 12, 2021, there was a heavy rainstorm in Southeastern Pennsylvania, including in Croydon, at Plaintiffs' Property. (Doc. No. 12-3 ¶ 15.) As the storm progressed, the rain "just kept coming," and rainwater began to accumulate on the ground. (*Id.* ¶¶ 16–18.) A "substantial amount of rainwater" accumulated in the backyard of the Property and flowed into the basement through windows and an external stairwell. (*Id.* ¶¶ 20–22.) Plaintiffs attempted to stop the flooding by stuffing blankets and towels around the door to the external stairwell, but their efforts were unsuccessful. (*Id.* ¶¶ 23–24.) Ms. Morrison explained that "[i]t was just too much water." (*Id.* ¶ 24.) By the time the storm abated, the basement was flooded with approximately four feet of water. (*Id.* ¶ 25.) The storm caused significant damage: Plaintiffs' consultant estimates that it would cost roughly $33,489.59 to restore the Property to its pre-loss condition, and Plaintiffs estimate that they lost nearly $24,000 in personal effects. (Doc. No. 13 at 11.)

On the day of the storm, Ms. Morrison reported the loss to Selective, and the next day, Selective's adjuster Greg Garms went to the Property to inspect the damage. (Doc. No. 12-3 ¶¶ 27–28.) Through his inspection, Mr. Garms confirmed that water entered the basement through the windows and down the exterior stairwell. (*Id.* ¶ 30.) On July 14, the day after the inspection and two days following the storm, Selective sent Plaintiffs a letter declining coverage. (*Id.* ¶ 32.) The letter explained that the Policy "d[id] not afford insurance coverage for this claim" because it "specifically excludes loss resulting directly or indirectly from surface water." (Doc. No. 12-9 at 1, 5.)

### B.        *Procedural History*

Plaintiffs initiated this action in the Philadelphia County Court of Common Pleas on September 22, 2021, asserting claims for breach of contract and bad faith denial of coverage. (Doc. No. 1-1.)  Selective timely removed the action to this Court, as the parties are diverse and the amount in controversy exceeds $75,000.  (Doc. No. 1).

Following discovery, Selective filed a motion for summary judgment.  (Doc. No. 12.) Selective argues summary judgment is appropriate based on the Policy's "Water" exclusion. (Doc. No. 12-2 at 11.)  Selective also contends summary judgment is appropriate to the bad faith claim because "a bad faith claim premised on the denial of insurance coverage cannot withstand summary judgment when the coverage issue is resolved in favor of the insurer."  (*Id.*)  Plaintiffs oppose the motion.  (Doc. No. 13.)  They argue the Policy covers loss caused by the overflow of water from an off-premises storm drain and that the loss to the Property was caused by the overflow of water from an off-premises storm drain.  (*Id.* at 16.)  They also contend summary judgment is unwarranted as to the bad faith claim because Selective "knowingly and recklessly denied coverage that was owed under the terms and conditions of the Policy."  (*Id.* at 20.)

## II.     LEGAL STANDARD

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A dispute is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the

outcome of the suit under the governing law." *Id.* at 248.  "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.  At "summary judgment the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks and alterations omitted).

III.    ANALYSIS

The Court considers the propriety of summary judgment as to each of Plaintiffs' claims in turn.

A.      *Breach of Contract*

To establish a breach of an insurance contract claim, it is necessary "for the insured to show a claim within the coverage provided by the policy." *Miller v. Boston Ins. Co.*, 218 A.2d 275, 277 (Pa. 1966) (quoting *Warner v. Emp'rs' Liab. Assurance Corp.*, 133 A.2d 231, 233 (Pa. 1957)).  Here, the Policy expressly excludes coverage for loss caused directly or indirectly by "Water."  (Doc. No. 12-8 at 18, 53.)  "Water" includes "surface water."  (*Id.* at 53.)  And it is well-established that "surface water" is defined as including "accumulated waters which flowed under a defective door during a heavy rainstorm" and "waters on the surface of the ground, usually created by rain or snow." *See T.H.E. Ins. Co. v. Charles Boyer Childrens Trust*, 269 F. App'x 220, 222 (3d Cir. 2008) (citing *Richamn v. Home Ins. Co. of N.Y.*, 94 A.2d 164, 166 (Pa. Super. 1953)).  Indeed, even Plaintiffs concede that rainwater is considered "surface water" for the purpose of this exclusion.  (Doc. No. 13 at 16.)

Nonetheless, Plaintiffs claim that they are entitled to coverage because that rainwater came from an overflowing storm drain, and an exception in the Policy provides coverage for loss caused by overflow from a storm drain.  (*Id.*)  The exception on which Plaintiffs rely reads,

**Exception to c.(6)**

Unless the loss is otherwise excluded, we cover loss to property covered . . . resulting from an accidental discharge or overflow of water or steam from within a:

(ii)     Storm drain, or water, steam or sewer pipe, off the "residence premises" . . .

(Doc. No. 12-8 at 16.)

This exception does not save Plaintiffs' claim.  The exception does not provide coverage for *any* loss caused by overflow from storm drains; rather, it provides coverage *only* where coverage is otherwise precluded under a specific provision in the Policy, "Section c.(6)."  (*See id.* at 15–16.)  In Section c.(6), the Policy provides that it does not insure for loss caused by a variety of specific causes, including the following:  wear and tear, mechanical breakdown, smog, rust, pollutants, settling, birds, vermin, rodents, or animals owned by an insured.  (*Id.* at 15.)  But Plaintiffs do not claim that their loss was caused by any of the limitations enumerated in Section c.(6), so the "Exception to c.(6)" does not provide Plaintiffs coverage.  *See Glaser v. GeoVera Specialty Ins. Co.*, 420 F. Supp. 3d 1287, 1295 (M.D. Fla. 2019) ("[Exception to c.(6)] . . . is an exception to the limitations in section 2.c.(6) of the Perils Insured Against. . . . [the plaintiffs] jump to the exception without identifying a loss to which the exception applies.  They then argue their loss is covered because of the exception . . . . This misguided logic is contrary to Florida law."); *Mason v. Bankers Ins. Grp.*, 90 So. 3d 1088, 1092 (La. Ct. App. 2012) ("[T]he subsection entitled 'Exception to c.(6)' only becomes relevant should [the parties] prove that the cause of the damages . . . is one of the listed causes in Subsection A.2.c.(6).").

In sum, Plaintiffs' claim is excluded from coverage, as the alleged loss was caused by surface water, and the "Exception to c.(6)" does not save Plaintiffs' claim, as Plaintiffs' claim is not barred from coverage for any of the reasons enumerated in Section c.(6).  Because the

alleged loss is not covered under the Policy, Plaintiffs' breach of contract claim fails.

### B.  Bad Faith

Selective also seeks summary judgment as to Plaintiffs' bad faith claim.  To establish a

claim for bad faith denial of insurance coverage under Pennsylvania law, a plaintiff must show

with clear and convincing evidence: "(1) that the insurer lacked a reasonable basis for denying

benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis."

*Smith v. Continental Cas. Co.*, 347 F. App'x 812, 815 (3d Cir. 2009) (internal citations omitted).

There is nothing in the record to indicate that Selective acted in bad faith in denying

Plaintiffs' claim.  Selective investigated the claim the day after it was reported and sent a letter

declining coverage the next day.  And, as discussed above, Selective had a reasonable basis for

denying Plaintiffs' claim—it was not covered under the Policy.  *See Post v. St. Paul Travelers*

*Ins. Co.*, 691 F.3d 500, 524–25 (3d Cir. 2012) (affirming the district court's entry of summary

judgment on bad faith denial of coverage claim where the insurer's claims-handling conduct was

"largely benign" and the plaintiff simply "disagree[d] with [the insurer's] decision to deny

coverage on the plausible basis that [an] exclusion precluded coverage").

Because Selective had a reasonable basis for denying coverage, Plaintiffs' bad faith claim

fails.

## IV.  CONCLUSION

For the reasons above, Selective's motion for summary judgment is granted.  An

appropriate Order follows.